UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JALVELYN MICHAEL LEE,  )
                      )
    Petitioner,        )    Case No. 1:09-cv-66
                      )
v.                    )    Honorable Paul L. Maloney
                      )
CINDI S. CURTIN,       )
                      )    **REPORT AND RECOMMENDATION**
    Respondent.        )
_____)

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a prison sentence of 13-to-30 years, imposed by the Muskegon County Circuit Court on December 12, 2005, after petitioner was convicted of armed robbery. MICH. COMP. LAWS § 750.529. On direct review, petitioner's appointed counsel challenged only the sufficiency of the evidence to prove identification beyond a reasonable doubt. Petitioner filed a *pro se* brief, raising ineffective assistance of trial counsel. By *per curiam* opinion entered June 19, 2007, a panel of the Michigan Court of Appeals analyzed and rejected each appellate claim. The Michigan Supreme Court denied leave to appeal by standard order issued October 29, 2007. This habeas corpus proceeding followed.

The *pro se* habeas corpus petition raises the same claims rejected by the state courts on direct appeal:

　　I.　　The evidence was insufficient to prove the identity of petitioner as the perpetrator beyond a reasonable doubt.

    II.       Trial counsel was constitutionally ineffective for (a) forgetting to file a notice of alibi and failing to call an available alibi witness, (b) failing to pursue evidence that would have emphasized the flaws in the state's case regarding discrepancies in the witness's identification, and (c) failing to request an expert witness on the reliability of witness identification.

    III.      Trial counsel was constitutionally ineffective in abandoning petitioner's alibi defense and failing to call alibi witnesses.

(Petition, docket # 1, ¶ 14). The state Attorney General has filed an answer to the petition, supported by the state trial and appellate records. Chief Judge Paul Maloney has referred this matter to me for review of the record and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I conclude that petitioner's claims are not meritorious and recommend that each ground for relief be denied on its merits.

### Proposed Findings of Fact

**A.**    **Trial Court Proceedings**

The state-court prosecution arose from an armed robbery committed by two men at approximately 5:30 a.m. on March 21, 2005, in Muskegon Heights, Michigan. The victim of the armed robbery was Clement Coleman, a cashier at a Shell gas station. The robbers wore bandannas covering their faces, up to their eyes. Nevertheless, Mr. Coleman was able to recognize both robbers, who were regular customers at the Shell station. Although he did not know their names, he picked them out of a photographic lineup a few days after the event. Arrest warrants were issued for petitioner and his alleged accomplice. Petitioner avoided apprehension for a time but was eventually found in the company of a girlfriend. Once petitioner was located, it required a foot chase to accomplish his arrest. Petitioner was charged in the Muskegon County Circuit Court with armed

robbery and possession of a firearm during commission of a felony. The felony-firearm charge was later dropped by the prosecution, when it came to light that the robbers were using a pellet gun.

Trial in the circuit court began on November 8, 2005, with jury selection, Judge John Ruck presiding. The trial continued over the next two days before Judge Timothy G. Hicks. The prosecution's principal witness was the victim, Clement Coleman, who had served as a cashier at the Shell station since 1988. (TT II, 32-33, docket # 21). He was working the third shift, which commences at 10:00 p.m. and ends at 6:00 a.m. At approximately 5:30 a.m. on March 21, 2005, Mr. Coleman was rearranging his cash drawer in anticipation of a shift change. (*Id.*, 36). Two men walked in with bandannas over their faces, up to their eyes. One of them had a gun. The man with the gun said "Open the drawer up." Coleman said, "Take what you want and just don't shoot me." (*Id.*, 37-38).

Coleman testified that he recognized petitioner by his voice, his eyes, and his physique, despite the fact that petitioner's face was obscured by a bandanna. (TT II, 38-39, 65, 72). Coleman knew petitioner as a customer who frequented the store as often as four or five times a week, sometimes more than once per day. Coleman testified that he had talked to petitioner "quite a lot" and that he was familiar with how petitioner acted and walked. (*Id.*, 34-35). Coleman recognized the other assailant as well, on the same basis. (*Id.*, 35).

The men took money from the counter, where Coleman had placed it in connection with his efforts to rearrange cash in the till for closing. They attempted to open the cash register, without success. The men also took prepaid phone cards ("Boost cards") from the counter. (TT II, 39, 57, 62-64). The prosecutor showed the jury a surveillance video of the incident, asking Coleman to narrate as the video was played. (*Id.*, 41-49). Because of the bandannas, the identity of the

assailants was not apparent from the videos. The video counter showed that the entire incident began at 5:29 a.m. and ended at 5:31 a.m. (*Id.*, 49).

On cross-examination, Coleman testified that he knew petitioner well, as petitioner had been coming to the store for two or three years, since he was 15 or 16 years old. (TT II, 56). Coleman testified that he was "absolutely sure" that the man with the gun was petitioner. (*Id.*, 65). After the men left, Coleman called police. When police arrived, he told them that he knew the robbers, not by name, but "by face." (TT II, 50). Four days later, detectives showed him a photo lineup, from which Coleman picked both petitioner and the other assailant. (*Id.*, 52). After the robbery, Coleman never saw petitioner in the store again. (*Id.*, 54).

The prosecution's other witness to petitioner's identity was the store owner, Rajwinder Grewal. Although Mr. Grewal was not present at the time of the robbery, he testified that he did know petitioner as a regular customer who would "hang out" at the gas station. (TT II, 81). He confirmed Coleman's testimony that petitioner came into the store quite often. (*Id.*, 81, 88). He also confirmed that both cash and phone cards were taken in the robbery. (*Id.*, 85). After the robbery, petitioner never showed up again. (*Id.*, 87).

In March 2005, Calvin Davis was a detective for the Muskegon Heights Police Department. He was assigned the investigation of the armed robbery. (TT II, 91). Davis interviewed the victim, Clement Coleman, who told Davis that he could positively identify both robbers, because they "frequented the store quite often." (*Id.*, 92-93). Coleman told him that even though their faces were partially covered, he recognized them by their facial features and by one of their voices. (*Id.*, 93). Davis prepared a photo lineup and showed it to Coleman, who pointed out the subject in picture 5 and initialed it. (*Id.*, 93). Picture 5 was petitioner, Jalvelyn Lee. (*Id.*, 94).

Coleman told Detective Davis that petitioner was the individual who held the handgun during the robbery. (*Id.*, 96).

Officer Steven Winston was dispatched to the Shell station on March 21, 2005, in response to a reported armed robbery. (TT II, 103-05). He interviewed Clement Coleman, who told him that the robbers had just run out of the store. He said that they were "regular customers," whom he knew by face but not by name. (*Id.*, 104).

On April 12, 2005, Officer Winston received a tip that petitioner, who had by then been named in an armed robbery warrant, was downtown at 41 Irwin. (TT II, 107-08). He and other officers drove to a location about fifty feet away from the house with their lights off, exited their cars and began walking up the sidewalk. (*Id.*, 109). They saw a teenage girl sitting on the front porch. They asked the girl whether petitioner was there, but the girl answered that she did not know who he was. At the same time, an elderly lady on the other side of the house got the officers' attention by pointing in the direction where petitioner was hiding. (*Id.*, 109). More officers responded, and petitioner was apprehended hiding under a porch. (*Id.*, 110). The girl who falsely denied knowing petitioner's whereabouts was his girlfriend. (*Id.*, 109).

The other witnesses implicating petitioner in the crime were inmates in the Muskegon County Jail to whom petitioner had made incriminating statements. Lyn Wallace, petitioner's cellmate at the Muskegon County Jail, testified that petitioner told him he had robbed a Shell station one night and then went back another night and did it again.[1] (TT II, 150-52). Petitioner said that he wore a mask, reached over and took some money from the counter and some phone cards. (*Id.*).

---

[1] Petitioner and his accomplice were involved in a robbery of the same gas station two days earlier. That charge was resolved by petitioner's plea of guilty to a charge of larceny in a building, for which he received a concurrent jail sentence of 244 days. (ST, 3-9).

Petitioner also admitted that he used a gun. (*Id.*, 156). James Hardiman also shared a cell with petitioner at the Muskegon County Jail. (TT II, 171). Petitioner told Hardiman that he and another person robbed the Shell-Mart with a pellet gun and that they grabbed cash and prepaid cellular cards. (*Id.*, 174-75). Petitioner also admitted that he wore a mask. (*Id.*, 175). He told Hardiman that the store clerk "knew him by face from going up there every day." (*Id.*, 176). Petitioner told him that he was at his girlfriend's house on the porch when she saw the police coming, so he tried to flee but got caught on a fence. (*Id.*). Likewise, Opey McGee was housed in a six-man cell with petitioner at the jail. (*Id.*, 199). McGee had never met petitioner before. (*Id.*, 200). Petitioner told McGee that he went inside a Shell station and that he got a small amount of money and some phone cards at gunpoint. (*Id.*, 200). Petitioner told him that he was confident of beating the case, even though he hung out at the store "all the time." (*Id.*, 201).

The defense rested without calling any witnesses. (TT II, 210). The jury was instructed, and after deliberation, found petitioner guilty of armed robbery on November 10, 2005. (TT III, 49-50, docket # 22). On December 12, 2005, petitioner appeared before Judge Hicks for sentencing. (Sentencing Transcript (ST), docket # 23). Defense counsel made it clear that petitioner maintained his innocence. (ST, 4). The prosecutor noted that two co-defendants confessed and named petitioner as their accomplice. (ST, 5-6). After hearing allocution by all parties, Judge Hicks sentenced petitioner to a term of 13-to-30 years, with credit for time served. (ST, 8-9).

    **B.**    **Appellate Proceedings**

Petitioner, through new appointed counsel, appealed as of right to the Michigan Court of Appeals. Counsel's brief raised a single issue: the insufficiency of the evidence to prove identity

of defendant beyond a reasonable doubt. Petitioner filed a *pro per* brief raising three claims of ineffective assistance of counsel: (a) failure to call an alibi witness and negligence in forgetting to file a notice of alibi; (b) failure to pursue evidence that would have "emphasized flaws in the state's case" regarding discrepancies in witness identifications; and (c) failing to call an expert witness on the question of reliability of eye witness testimony. (Briefs found in Michigan Court of Appeals Record, docket # 24).

By unpublished, *per curiam* opinion issued June 19, 2007, the Michigan Court of Appeals analyzed and rejected each claim of error. On the question of the sufficiency of the evidence to show identity, the court noted that identity is an essential element of all criminal offenses and must be proven beyond a reasonable doubt. (Op., 2). Viewing the evidence in a light most favorable to the prosecution, the court found that a rational trier of fact could have found petitioner was the perpetrator, based on the victim's "positive and unequivocal" testimony, as corroborated by petitioner's own admissions of guilt to jailhouse companions. (Op., 1-2).

Turning to petitioner's *pro se* allegations of ineffective assistance of counsel, the Court of Appeals noted that the claims were unpreserved below and that appellate review was therefore "limited to errors apparent on the record." (Op., 2). The court articulated the federal standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which it used to judge each of petitioner's claims. The court first found that petitioner had not shown prejudice arising from the failure to call an alibi witness. The alibi witness was petitioner's girlfriend, Shawnee Ealy, who allegedly would have testified that she was with petitioner at her house in Muskegon on the night of the robbery. According to the *pro se* brief, Ealy would have testified that when she left for work at 5:50 a.m., petitioner was still sound asleep. (*Pro se* Brief at 14). The Court of Appeals found that

the record did not support petitioner's assertion that an alibi witness was known to defense counsel and was available for trial or that defense counsel "had just forgotten to file a notice of alibi." (Op., 3). "Defendant has simply not met his burden of establishing the factual predicate for this claim of ineffective assistance of counsel." (*Id.*).

With regard to the allegation that counsel failed to pursue discrepancies in the testimony regarding identification, the Court of Appeals found the claim meritless. The court determined that petitioner had made only a "bare allegation" of ineffective assistance of counsel unsupported by proof. The court noted that there were no such discrepancies, as the victim told police officers during their first interview that he recognized petitioner. The court again relied on petitioner's admissions to three jail inmates, and rejected the claim that counsel failed to cross-examine these witnesses. (Op., 3).

The court found no merit in petitioner's claim of ineffective assistance arising from counsel's failure to seek appointment of an expert witness to testify concerning the reliability of eyewitness identifications. The court labeled this argument "speculative," stating that petitioner did not demonstrate the likelihood that the trial court would have granted such a request. (Op., 3). Further, counsel challenged the reliability of the identification in other ways. (Op., 4).

Finally, the court declined to review petitioner's challenge to counsel's failure to object to alleged hearsay, as the *pro se* brief failed to preserve the issue in the method required by the court rules. In any event, the hearsay objection would not have been sustained, as the statements were not hearsay under Mich. R. Evid. 801(d)(2)(A). (Op., 4).

On August 9, 2007, petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court. The application merely attached the briefs filed by petitioner and his

counsel in the court of appeals. By standard order entered October 29, 2007, the Michigan Supreme Court denied discretionary review. (Mich. S. Ct. Record, docket # 25).

On January 3, 2009, petitioner filed a *pro se* application for habeas corpus relief. His petition raises the same claims rejected on direct review: insufficiency of the evidence and ineffective assistance of counsel.

**Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 130 S. Ct. 1855, 1862 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.")(quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if that state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should apply or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle

to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

## Discussion

### I.   Sufficiency of the Evidence

Petitioner's first habeas corpus claim is that the evidence was insufficient to establish his identity as the perpetrator of the armed robbery for which he was convicted. A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weight the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *see Cavazos v. Smith*, 132 S. Ct. 2 (2011) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial."). Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim, which petitioner's counsel raised on appeal. Review of this issue must be conducted under the AEDPA standard, which

the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587, 596 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534. "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> Thus, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:
>
> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

In the present case, the Michigan Court of Appeals recognized that establishment of identity is an essential element of all criminal offenses. (Op.at 2, citing *People v. Oliphant*, 250 N.W.2d 443 (Mich. 1976)). The court articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard. (Op., 1). The court recognized that the burden was on the prosecution to prove each element of the case beyond a reasonable doubt. (*Id.*). Applying the *Jackson* standard, the court found that the testimony of the victim, Clement Coleman, was sufficient in the circumstances to establish identity. The court noted that the victim's testimony was corroborated by petitioner's own admissions, made to more than one jail inmate. "Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find that defendant's identification was proven beyond a reasonable doubt." (Op., 2).

The decision of the Michigan Court of Appeals easily withstands scrutiny under the doubly deferential standard of AEDPA. The court applied the correct constitutional test to the evidence adduced at trial. The court's decision was objectively reasonable and does not contravene any clearly established holding of the United States Supreme Court. The appellate court was clearly correct in determining that the victim's testimony, even standing alone, was sufficient to establish identity in the circumstances of this case. If petitioner's argument were accepted, the Constitution would forbid conviction of any criminal who covered his face during the perpetration of a crime, despite the victim's unequivocal testimony that the victim was nevertheless able to identify the perpetrator by voice, demeanor, and other features. No decision of the Supreme Court has ever articulated such an impossible standard for criminal prosecutions.

The decision of the Michigan Supreme Court upholding the sufficiency of the evidence to support petitioner's conviction easily withstands scrutiny under AEDPA.

## II. Ineffective Assistance of Counsel

Petitioner asserts that his attorney was ineffective in three respects. First, he asserts that counsel failed to call an alibi witness and failed to preserve this defense by negligently forgetting to file a notice of alibi. Second, petitioner asserts that counsel should have pursued discrepancies in the testimony regarding identification. Finally, petitioner argues that counsel should have sought appointment of an expert witness to testify about the unreliability of eyewitness identification.[2] On direct review, the Michigan Court of Appeals determined that petitioner had not preserved these claims by presenting evidence of ineffective assistance of counsel in the trial court. The court therefore limited its review to the evidence appearing of record. (Op., 2). The court reviewed each of petitioner's claims and found that all claims were unsupported and that petitioner failed to meet the constitutional standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). (Op., 2-4).

Petitioner's claim of ineffective assistance of counsel is meritless. Claims of ineffective assistance of counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*. Petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687-88. In adjudicating the first prong of the standard, the court must judge the reasonableness of

---

[2] Ground III of the petition essentially repeats petitioner's claim in ground II arising from the failure to call an alibi witness.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. The court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.* Strategic choices after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable." *Id.* To prevail on the second prong, petitioner must demonstrate a "reasonable probability" that the result of the trial would have been different but for counsel's errors. *Id.* at 694.

Because the state court of appeals directly addressed petitioner's claims of ineffective assistance of trial counsel, that decision must be afforded deference under AEDPA. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell*, 535 U.S. at 698-99; *Lovell v. Duffey*, 629 F.3d 587, 594-95 (6th Cir. 2011). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). Recent Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 129 S. Ct. at 1420; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6

(2003) (*per curiam*). Furthermore, the findings of historical fact made by the state courts are presumed to be correct, in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see Davis v. Lafler*, 658 F.3d at 531.

Petitioner's first claim of ineffective assistance of counsel arises from counsel's alleged failure to preserve and present an alibi defense. Petitioner asserts, without record support, that his girlfriend -- Shawnee Ealy -- would have testified that petitioner was at her house, sound asleep, at the time of the armed robbery. He also asserts, again without record support, that his trial counsel knew of the alibi defense but negligently failed to preserve it in the manner required by state law. The state Court of Appeals rejected these assertions because of the lack of any evidence to support them.

The decision of the Michigan Court of Appeals is subject to review in habeas corpus under the AEDPA standard, 28 U.S.C. § 2254(d)(1), which requires a finding that the state court unreasonably applied the *Strickland* standard. In performing this review, the habeas court is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The statute requires "an examination of the state-court decision at the time it was made," and limits this court's examination to the record in existence at that same time. *Id.* The record before the state Court of Appeals contained only unvarnished assertions, unsupported by any proof, concerning the content of Ms. Ealy's purported testimony. Likewise, the state-court record did not contain a shred of proof to support petitioner's assertion that his attorney knew about a viable alibi defense but negligently failed to preserve it. Moreover, the record before this court is similarly devoid of any evidence, beyond petitioner's unsupported assertions, tending to show either that viable alibi testimony existed or that counsel negligently failed

to present it. Consequently, petitioner cannot establish the factual basis for his first claim of ineffective assistance of counsel, which would require a finding that Ms. Ealy indeed would have provided alibi testimony and that defense counsel was indeed negligent in failing to preserve or present it. "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Cullen*, 131 S. Ct. at 1400. The record before the state court contained no support for petitioner's contentions concerning his counsel's failure to present an alibi defense, and those contentions therefore cannot be established in this habeas corpus proceeding. Petitioner has failed to show that the decision of the Michigan Court of Appeals on this issue represented an unreasonable application of *Strickland* to the facts of this case.[3]

Petitioner's second claim is a vague assertion that his counsel was ineffective for failing to pursue alleged discrepancies in the identification testimony presented by Clement Coleman, the victim of the robbery. The Michigan Court of Appeals rejected this claim, pointing out that there were no discrepancies in Coleman's testimony: the first time he talked to police, the victim said that he knew exactly who the robbers were, he picked them out of a photo array thereafter, and never wavered from his identification. Plaintiff's amorphous assertions in this regard fall far short of establishing that the Michigan Court of Appeals was unreasonable in rejecting this claim under the *Strickland* standard.

---

[3] In addition to being unable to show a serious error of counsel, petitioner is unable to show prejudice. His purported alibi witness, Ms. Ealy, is the same person who lied to police when they came to her house to execute an arrest warrant for petitioner. There is no reasonable probability that, had this alibi testimony been presented, the result of the proceeding would have been different.

Finally, petitioner asserts that his counsel was ineffective for failing to secure and seek appointment of an expert witness on the issue of the reliability of eyewitness identification. Again, the state Court of Appeals rejected this contention for the reason that it was unsupported in fact. The record before the state court failed to establish that any such witness existed. Moreover, the Court of Appeals rejected this claim for failure of petitioner to show the factual predicate for appointment of an expert. The court cited the Michigan Supreme Court decision in *People v. Tanner*, 671 N.W.2d 728 (Mich. 2003), which held that an indigent defendant must demonstrate "a nexus between the facts of the case and the need for an expert," in order to be entitled to funds for an appointed expert witness. 671 N.W.2d at 730-31. The *Tanner* court held that it is not enough for a defendant to show a "mere possibility" of assistance from the requested expert. *Id.* As in *Tanner*, petitioner in the present case failed to present the state courts with any basis for concluding that the required nexus existed between the facts of the present case and the need for an expert, such that counsel could be faulted for failing to seek appointment of such an expert. Petitioner must make the required showing under AEDPA on the basis of the state factual record that existed in the state court, as required by *Cullen v. Pinholster*, 131 S. Ct. at 1400. The state-court record is completely devoid of any factual support for petitioner's contentions. To accept petitioner's argument, this court would be required to hold that counsel is automatically ineffective for failure to procure an expert witness on identification in any case in which identification is disputed. The Supreme Court has never established such a principle of constitutional law.[4]

---

[4] The Sixth Circuit has rejected petitioner's argument regarding expert witness testimony. Cross-examination appeals to the common experience of jurors and alerts them to the unreliability of eyewitness testimony without the need for an expert. *See Dorch v. Smith,* 105 F. App'x 650, 653, 656-57 (6th Cir. 2004); *Tipton v. United States*, No. 96-5026, 1996 WL 549802, at * 1-2 (6th Cir. Sept. 26, 1996); *accord Ferensic v. Birkett*, 501 F.3d 469, 474, 484 (6th Cir. 2007) (panel majority

Petitioner has failed to demonstrate that the decision of the Michigan Court of Appeals was objectively unreasonable in its treatment of petitioner's Sixth Amendment claim of ineffective assistance of counsel. Petitioner therefore cannot prevail in this habeas corpus challenge to his conviction.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated:   December 14, 2011            /s/  Joseph G. Scoville
                                      United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).

---

acknowledging the precedent established "by *Dorch*, *Tipton*, and similar cases," and restricting its decision to petitioner's claim that his right to present a defense had been denied when the trial court excluded his expert's testimony). Petitioner's argument is further undermined by decisions from other circuits and from other districts within this circuit. *See e.g.*, *Woodard v. Thayler*, 414 F. App'x 675, 680 (5th Cir. 2011) (citing *Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992)); *Jones v. Smith*, 772 F.2d 668, 675 (11th Cir. 1985); *Henderson v. Lafler*, No. 07-14071, 2010 WL 3906890, at * 12 (E.D. Mich. Sept. 30, 2010); *Madrigal v. Bagley*, 276 F. Supp.2d 744, 791 (N.D. Ohio 2003) (collecting cases).